Good morning, your honors, and may it please the court, I'm Elizabeth Ann Peterson for the United States. With me at council table is Wes Williams, who represents the Walker River Paiute tribe, and who will be sharing my time this morning, as well as Gus Jorino, who represented the United States in the district court. I will speak for eight minutes and then Mr. Williams will speak for five, and I'd like to reserve the remaining three for rebuttal. The district court in this case summarily dismissed all of the claims of the United States and the Walker River Paiute tribe for modification of the 1936 water rights decree in this case to reflect certain Federal Reserve and other Federal water rights, most of which could not have been and none of which were litigated prior to the decree. In doing so, the district court invalidated important property interests of both the United States and the tribe without ever allowing those claims to be litigated. The district court committed three significant legal errors. First, the court acted sua sponte to dismiss the claims as precluded. Then it improperly concluded that the claims constituted a new action and were not, therefore, properly within its jurisdiction. And finally, without making any of the appropriate findings, it dismissed the claims as precluded. Because of the cavalier and arbitrary way in which the district court dismissed the claims against an established record of hostility to Federal officials and policies, the United States has taken the extraordinary step in this case of requesting that this court instruct the district court to re-enact the claims. And if it's re-assigned, it would require re-assignment in all of the other cases. So the U.S.'s request affects all other cases here. That is correct, Your Honor. And the principal grounds for that is because of the hostility to individual attorneys? That's the prior case in which the mandamus was issued, or at least we issued an opinion on that. That's correct. And that was a fairly strong rebuke of the judge's attitude toward Federal policies and authorities. Right. Is there any evidence that you've put into the record that indicates that there are continuing effects of that? Yes. I believe that his, for example, his cavalier treatment of the res judicata ruling here, which didn't allow the United States or the tribe to litigate any claims and has no support in the law of this court or any other court, reflects a general disregard for his responsibilities to administer the decree here. In addition, I think that the... The attorneys were allowed to appear only after the United States... Right. But it shows that the district judge was perfectly capable of following directions on that. And immediately then dismissed all the claims without allowing them to be litigated. We think that's a significant fact. This court has never affirmed the dismissal of claims as precluded without allowing the parties an opportunity to be heard on that question. And in this case, the district court not only did that, but had already assured the parties that preclusion issues would be addressed in a later stage of the litigation. So, ruling on preclusion here is even less reasonable than it would be in the ordinary case. None of the claims here has been previously litigated, as we explained in our... Do you think the district judge would have allowed briefing if they'd been Nevada-admitted attorneys? That remains to be seen. I honestly don't know that he would have allowed them to present their case had they been from the United States attorney's office or somewhere else. I think he has a particularly strong personal view about the matters at issue here and that that may have resulted, for example, in his remarkably unreasonable conclusion that the lake is not within the Walker River Basin. I think that the district court simply brought his personal views too much to bear in this case for him to be impartial, and we therefore believe that reassignment in this case would be appropriate. In this case, none of the claims has been adjudicated previously, and the claims were brought as a request to modify the 1936 decree. The previous district judge and Judge Jones along the way made clear that the case is a unity and that these claims were also properly brought within the unity of this one case. Judge Jones then, sua sponte, held that those claims were not a request for modification and therefore not within his jurisdiction to modify the decree, but were rather a new action, and that the strict rule of res judicata or preclusion would therefore preclude his considering them at all. The claims were never heard, but the facts of those claims show that substantial change circumstances gave rise to the most significant claims raised here. For example, the United States expanded the reservation in 1936 substantially, and the rule in federal law is that when the United States reserves land, it also reserves water rights. But the claim for those water rights was precluded, according to Judge Jones, by a decree that was issued before the reservation occurred. Similarly, the reservoir right here was never litigated, and it was clear that everyone assumed that the tribe did have the right to store water in the reservoir that was constructed by the United States for it. And the only way that that issue was raised in litigation was through Ridd's challenge to the Winters' right for the reservation on the ground that the United States didn't intend to reserve a direct flow right because it instead had the idea that it might eventually be able to build a reservoir. So the claims here are within the teaching of Arizona against California that where changed circumstances occur, water rights decrees, although they are subject to general principles of finality and repose in ordinary circumstances, should be allowed some degree of modification for equitable reasons. And here the substantially changed circumstances, which also include Nevada's 1939 recognition of diversions of groundwater, which has substantially reduced the water that is now reaching the reservoir in the river, should have, we believe, qualified these claims for consideration under the modification clause of the decree itself. We don't contend that the decree is not final for most purposes, but the clear changed circumstances and the inability of the United States and the tribe to have previously litigated these claims, which are substantial property rights of the tribe and the United States, should at least have been examined and considered, and we believe that they are appropriate modifications and should be recognized in the decree. There is no other appropriate forum for those claims. So by concluding, even by concluding, as the appellees have proposed, that those claims simply are not appropriate modifications. They are some other kind of claims and should be heard in a state court. The tribe and the United States are left without those rights. They have good claims that cannot be litigated because of the order in this case, which needs to be reversed, and these need to be given proper consideration by an impartial judge in the district court. And the district court is, under this court's rules, the only place where that consideration can be given. And in our view, because of the district court's apparent difficulty in taking seriously the significant interests that are reflected by these claims, and its cavalier dismissal of all of them, we think reassignment on remand is the only way that these claims can be considered in an impartial court. And I'd like to reserve the remainder of my time. Thank you, Ms. Peterson. Mr. Williams? Good morning, if it pleases the court. Wes Williams, Jr., on behalf of the Walker River Paiute Tribe. I'd like to join in Ms. Peterson's comments and raise a couple of additional points. First, I don't believe Ms. Peterson can express the shock that the parties felt in receiving this decision that dismissed the tribes and the U.S.'s claims. The basis for the decision was on equitable grounds that the court directed the parties not to address and its motions to dismiss. I believe probably the opposing parties were equally shocked. Their motions were granted on issues they did not raise. And in the hearings before Judge Jones, they addressed these issues. Mr. Napoli specifically asked Judge Jones whether he would have the opportunity in the future to raise res judicata and equitable defenses. And Judge Jones agreed that those could be raised at a later time. The Department of Wildlife specifically said in their motion to dismiss that their motion to dismiss did not address res judicata, collateral estoppel, or issues raised in the case of Nevada versus the United States, and that these issues would be raised in later motions. Now, if you look at the Department of Wildlife's brief filed in this case, it's based on those exact issues and focuses on the case of Nevada versus the United States. Those were issues that no one expected to be addressed in the court's decision. And it would have been simple for the tribe to address those issues if they had been raised. The tribe's claims are claims that arose after the effective date of the Walker River Decree. The decree's effective date is April 14, 1936. The lands restored to the reservation occurred in September of that year, September of 1936. Weber Reservoir was completed the following year. So those claims arose after the effective date of the decree, so they could not have been raised in the original case. The tribe in the United States, they raised these claims in the Walker River Decree Court, and the one thing that Judge Jones addressed in his decision was the clause regarding the modification ability, the court's ability to modify the decree. And he said that the court has continuing jurisdiction to increase or decrease a party's rights and to change the decree, which may be based on yet unlitigated claims. Now, those are issues that were not appealed in this case. The opposing parties did not appeal that. Instead, what they focused on is other clause of the decree that says that the parties are enjoined from claiming additional rights. However, that clause also says that you're enjoined from claiming additional rights except for rights stated in the decree. Well, that's exactly what we're seeking in this case. We're seeking to amend the decree so that these rights that we're claiming are stated in the decree. The place that we filed, the Walker River Decree Court, it's the court that does have jurisdiction. It has the ability to administer the Walker River, and there's basically no other court to file for Federal Reserve claims. If we had filed elsewhere, it would have violated numerous policies that this court, the U.S. Supreme Court, Congress, and the McLaren Amendment, they've all recognized that it's best to have one court adjudicating and administering water rights. That was recognized by the U.S. Supreme Court in an earlier Walker River case in 1910. It was a citation for this 218 U.S. 258 where the court stated that if a court is seized, it should proceed to determination without interference from other courts. Judge Tashima in 1999 also addressed that similar issue in a Truckee River, Carson River case. In the case of 174 F3rd 1007 where it was stated that if you have a complex and comprehensive water adjudication that has conflicting federal and state administration of rights, that it's unworkable to have two courts addressing that. So for those reasons, we filed the case in the Walker River Decree Court. And with that, I thank you for your time. Thank you, Mr. Williams. Gordon DiPoli on behalf of the Walker River Adjudication District. We have, I have 10 minutes to address the issue over whether the district court had jurisdiction under the decree, and I also want to speak to the court's sui sponte dismissal of the claim for Weber Reservoir. Mr. Stockton will follow me on res judicata for five minutes, and Mr. Walston will follow him for five minutes on decree provisions which bar these claims. I want to, I want the issue of the district court did not make a sui sponte decision on whether the court had jurisdiction under the decree or should treat these claims as new actions. That was an integral part of the motion to dismiss that the district made. We specifically contended that the court should, does not have jurisdiction under the decree, and if the court determined that its only jurisdiction was under the decree, it had no jurisdiction, but that it was appropriate for the court, after these many years and all this service, to treat the claims as a new action and look at the jurisdictional bases that were alleged for a new action in the amended counterclaims. The amended counterclaims do not take the form of any kind of a motion to modify the decree. They are stated as new claims. There is no Rule 60 motion to modify the decree on changed circumstances or anything else. The other thing about these claims is that we're not just talking about claims to water from the Walker River. We're talking about claims to water from every source of water in the entire Walker River Basin in both Nevada and California. Groundwater, seeps and springs that don't reach any tributary of the Walker River, streams that flow off the Wasatch Range directly into Walker Lake. In our view, the reservation of jurisdiction to modify the decree could not give the court jurisdiction in areas where it never had jurisdiction in the first place. This case involved both Nevada and California and the District of Nevada as an in personam action, pursuant to what I would refer to as a federal long arm statute that was in effect for three years from 1922 to 1925 that allowed the court to get service of process on water users in California. That no longer exists. How a district court with a decree on the Walker River can get jurisdiction over water in California by a provision to modify it is simply not the case. In terms of the position that we have taken, we did take the position that if the court's only jurisdiction is to modify the decree under paragraph 14 of the decree, then it didn't have jurisdiction over these claims and that if it's inappropriate for it to treat it as a new action and the only way it can look for jurisdiction is there, it had no jurisdiction, it properly dismissed for lack of subject matter jurisdiction, and we didn't need to cross appeal to take that position because we're not going to lessen the rights of the United States and the tribe. Once the court had no jurisdiction, it couldn't decide anything more and the United States and the tribe can simply start over with a new action. So that is our position and we don't need a possibility. Where can the U.S. start over? Well, with all these claims, I think they could start some of them in the U.S. district court in Nevada. They could start some probably in California, but I think with a lot of these claims, the state law claims. Remind me, did the United States offer any other basis for jurisdiction other than the decree itself? Oh, yes, they did, Your Honor. They offered all the jurisdiction for a new action. The United States is playing a federal question. And did the district judge address any of that? Yes, the district judge found that he had jurisdiction on the basis of federal question, and I believe the United States is playing as the tribe. And then dismiss it all as race judicata. He dismissed a lot of it as race judicata. It's hard to know exactly, Your Honor. I would say what he said was any claim that could have been made prior to the decree is barred by race judicata. Any post-decree claims all have to be filed before state administrative agencies, whether they're based on state or federal law. The basis for that is I don't know where that basis would come from. But that would be my interpretation of what he did. And in our brief, we have the district has acknowledged that it was not appropriate to sua sponte dismiss all of these claims on race judicata grounds. The one exception that we think applies here relates to Weber Reservoir. And the exception in Arizona v. California that allows a court to sua sponte bind a claim barred by race judicata where judicial resources have been expended. The other special section. You just said something about sua sponte. You opened by saying it wasn't sua sponte. It was part of your motion to dismiss, even though you apparently put on the record that you had some arguments that you would be making later. And now you said something about it was sua sponte in some respect. So could you clarify? Yes, Your Honor. What I said, the court's decision to treat the claims as a new action rather than as having jurisdiction under the decree, that was an issue that we filed our motion on and everybody got to brief. So his decision that he to treat these as a new action was not a sua sponte decision. We raised that. However, his decision to dismiss the federal claims, the pre-decree claims on race judicata grounds was sua sponte. And the other reason for Weber is Nevada v. the United States. And the United States and the tribe, I think, focus on the wrong use of, wrong question of what the judicial resources were expended on. They essentially contend you have to show that from 1924 to 1940, we were litigating whether or not there was a claim for a water right to store water in Weber Reservoir. That has nothing to do with the federal implied reserve right claim. What is important there is the fact, date, and purpose of reservation in 1859. Congressional appropriation and expenditure of funds either then or later doesn't change what the reserved right is. The United States is not constrained in limiting a claim for a reserved right because Congress has or has not appropriated money to put the water to use that the United States is claiming. There was no right for a right to store water in Weber Reservoir under the implied reservation of doctrine principle any more than there was an implied reserved right for a fishery, a fishery water right for Pyramid Lake. What the Nevada, what the United States Supreme Court looked at in that case is, did the United States litigate the full implied reserved water right for the reservoir? And it found that it did, and it relied very heavily on the complaint in the Oreditch litigation. You can compare the complaint there to the complaint here, and with the exception of the quantities of water sought and the names Pyramid Lake and Truckee River, they are nearly identical. And that really is the focus. You don't get to seek, and here the United States sought a lot more water than they got, which would have required a lot of expenditure of funds in order to put the land into cultivation, 11,000 acres. They weren't limited by the fact that they didn't have congressional appropriations to develop all of that land. And the fact that during the litigation the United States came up with money to build a reservoir doesn't change the claim. If the United States came up today with $100 million to build an even bigger reservoir, that's not going to give rise to an implied reserved right to store more water for the reservation. It's simply not relevant. The focus is on what was intended when the reservation was set aside, and that's the quantity. And it doesn't go up or down based on the size of congressional appropriations to build facilities. So we think that the one potential exception to dismissal on sui sponte grounds is the claim for Weber Reservoir, and my time is up. Thank you. May it please the Court, Brian Stockton, representing the Nevada Department of Wildlife. I'd like to start with probably the most problematic issue from our standpoint in defending Judge Jones' dismissal on res judicata, which is the fact that the Nevada Department of Wildlife, which is the fact that the Nevada Department of Wildlife, which is the fact that the Nevada Department of Wildlife, which is the timing of it, and Mr. Williams is absolutely correct, we assumed that these would be briefed further down the line. However, once the judge ruled on that, it was so clear in this case I think that it was proper for Judge Jones to rule on that issue. And if you look at the Headwaters case, which is relied on heavily by the United States and the Tribe, in that case this Court surveyed other cases that concerned sui sponte dismissals. Where a party hadn't had a chance to brief the issues. And in all those cases there were substantial questions as to the element. In the Headwaters case itself, as to some of the elements of res judicata, which this Court's established the three elements for res judicata. In that case there was a question of whether the parties were the same or in privity with the parties that had the previous litigation. Because they had a new name, or it was different groups that were suing, although they were using the same lawyer. And the Court said, well that's a question of fact. But in this case you still have the United States and the Tribe and the other water users, including the Department of Wildlife, on the system. So there's no question... But what interest could possibly be served by a district court deciding this question without even allowing the parties to brief it? Well, it's a matter of... Well, remember 24 years of that was completing service of process. Just two years ago we completed service of process. But you're right, there wasn't a huge hurry, but I think Judge Jones felt that it was time. And I think if you look at Justice Brennan's concurrence in the Nevada v. United States case, I think he said it very well there. He said, in the final analysis, our decision today is that thousands of small farmers in northwestern Nevada can rely on the specific promises made to their forebears two or three generations ago, solemnized in a judicial decree, and despite the strong claim of the Pyramid Lake Paiutes. And what he's talking about there is this water has been through two litigations. In 1902, the Miller & Lux Cattle Company brought the first suit, they were adjudicated, and they had a final decree. And then in 1924, and that was in 1915, 1924 the United States sued again for their federal reserve rights. So all these rights have been through two decree proceedings that each lasted about 15 years. And it's time to put a stop to that. None of the cases cited have the United States Supreme Court allow the United States to keep coming back over and over again. I mean, who wants to wonder whether they're going to have water in their house and have to litigate against high-powered attorneys like these people here all the time over their water rights. This is the third go-round for these water rights. And that's the reason for the timing, is because it's just not fair for the United States to keep dragging these people into court and make them defend their water rights over and over again. In the Arizona v. California case, they talked about, I think it was the Yuma Reservation had expanded during the pendency of the litigation. The Supreme Court said, no, you're not going to litigate that because it wasn't part of the earlier case. The only thing the court allowed to be litigated in the Arizona v. California case were the disputed boundaries that were specifically called out in the decree. So everybody knew those were still to be litigated, and the Supreme Court didn't allow anything else to be litigated. And in Nevada v. California, or Nevada v. United States, I mean, that's the seminal case where the Supreme Court said that we need to have finality in these cases. And they said the very object the civil courts are established is to secure the peace and repose of society. And they said in a footnote that there's nowhere where this is more important than in the area of water rights. Because we all know nobody can live, or this court has even held in the 1939 opinion, that this is the only source of water for the people along the Walker River. And so it's our position that, you know, although the timing is somewhat awkward, it was appropriate for Judge Jones to end this litigation and stop the United States from continuing to claim more and more water rights. And I think I have just a few seconds to go through the other elements of res judicata, and that there's a final judgment on the merits. In this case, we not only have one final judgment on the merits, we've been through two. And then finally, whether they involve the same nucleus of facts, the same nucleus of facts are obvious, because they're claiming they need more water from the Walker River, and my time is up. Thank you. Roderick Wilson, I represent Lyon County and Mono County in this case, and also various water users in Nevada and California. The United States in this case is asserting claims for additional water rights in the Walker River. Many of these claims arose prior to the time that the Walker River decree was issued in 1936. And so many of these claims could have been brought as part of the Walker River litigation, but the United States did not do that. If the claims are upheld, this would reduce the availability of water for other water users whose rights were actually adjudicated in that decree. And our view is that putting aside even issues of res judicata and lapses, which have been discussed by the prior speakers, we believe that the decree itself, the decree itself, bars the United States from asserting its claims for additional water rights. And I refer to paragraph 11 of the decree. Paragraph 11 says that the parties to this decree are, quote, forever enjoined and restrained from asserting water rights except for the rights that are adjudicated in this decree. And so in our view, paragraph 11 precludes the United States from claiming the additional rights. You don't have to get to the res judicata issues because the decree itself bars the claims. Now, the United States' argument is that paragraph 14 of the decree, the reserve jurisdiction clause, allows the United States to assert the additional rights, claimed rights. Paragraph 14, of course, provides reserve jurisdiction for the court to, quote, modify the decree. But in our view, the word modify, whatever it means, does not mean a claim for additional water rights because that topic is covered clearly and expressly in the United States. And so in our view, paragraph 11 of the decree. Usually in res judicata, we're referring to some kind of a prior case, something that had a different number. This is actually a modification of the same case. So isn't the proper doctrine here the law of the case? Doesn't that have slightly different meaning? Well, I think your question goes to the res judicata issue. But our argument is not based on the res judicata issue. We accept the arguments and agree with the arguments asserted by the, by Glock River Irrigation District and Nevada Department of Wildlife. But we're not making that argument. We're putting those arguments aside. Are you really making a latches argument? You haven't used the L word. No, we're making a latches argument. We're making an argument that the decree itself. If you look at the decree, the decree bars the United States from asserting. But the decree was modified in 1940, right? Yes. Okay. So there was a period of time in which, in which the parties were able to come in and seek a modification. Some of the claims that the U.S. has here are based on, on modifications to the, to the, to the reservation that were adopted. What, the day after the decree was adopted? Is that April 15th? Is that right? The decree was adopted on, approved on April 14th. And on April 15th, the U.S. increased the reservation. If it had come in, you know, the day after and said, you know, this has been pending for a while, but we just got, we just got approval for it. We're going to, we're going to change the reservation. That may require modifications in the decree. Couldn't they, couldn't they have sought that? Not as part of the decree. That's, that's our argument. Our, our argument is that the decree. But we know the decree could be modified. The decree wasn't set in stone because it was modified in 1940. Yeah, certainly. Why couldn't it have been modified in 1937? Well, I, I don't know about the days between 36 and 1940. I haven't thought of that. I, I truly don't have an answer to that. But, but clearly the, the Ninth Circuit in its 1939 decision upheld the decree but overturned parts of it. So the, the district court was required, pursuant to the Ninth Circuit's directive, to go back and modify the decree. Now I'm not sure about claims that arose in, in that interim. And that's, that's really not my argument. My argument is that whatever date you, you construe the decree as having a final effect, whether it's 1936 or 1940, the decree bars claims for additional water rights asserted by the United States after the date of the decree, whatever that decree date happens to be. That's not to say that the United States does not, cannot pursue its claims in some other forum. There are, assuming that the doctrines of Régé Ducotte and, and Latches do not bar the claims, perhaps the United States can initiate an action in a federal district court or state court or before a state administrative body to assert these claims. But our view is that the decree itself freezes the rights as of a period of time. The, the date of the decree, whatever that decree date happens to be. And it does it because of the importance of the principle I talked about in the last case, which is the principle of the finality and repose of water rights decrees. The decree obviously did not contemplate parties coming back before the court again and again and again with the reassertion of additional claims. I would also say that the district court itself appeared to dismiss the claims, not because of Régé Ducotte, but because of the decree itself. In two places, pages 11 and 12 of the decision, the court said the decree prevents the court from adjudicating the claims. And in both instances, the court then cited paragraph 11 and its forever enjoined and restrained language. Thank you. Ms. Peterson, you have time? Ms. Peterson? I would like first to address the question, what was going on in the Régé Ducotte analysis here. The main issue is whether the same claim was being adjudicated in the counterclaims that had already been adjudicated in the decree litigation. And there was no identity of claims. Because the court didn't allow development of the record here, we weren't in a position to show that. But as numerous references to the expansion of the reservation have established, there were new federal reserved water rights. Those new federal reserved water rights, whether for all of these entities, only for the reservation, only for the reservation and its reservoir, whatever, the district court did not distinguish among all these many, many claims and simply threw them all out and said that they could be brought in some other forum. Under this court's law, that's incorrect. First, those rights didn't exist when the decree, certainly didn't exist when the amended complaint was filed in 1924, and therefore were not reflected in the decree. But did not, for the most part, even occur until after the decree itself became final. They obviously should have been considered as appropriate subjects for modification of the decree. If factual development of those individual claims suggested that the circumstances did not render them appropriate for modification of the decree, the court was free to make that conclusion. Obviously, this is equitable discretion that we're calling upon in the jurisdiction to modify the decree. With respect to whether this is law of the case, arrest judicata, in Arizona v. California, the Supreme Court found that the law of the case doctrine isn't rigid enough to respect the rights that have been previously litigated in a water rights decree. Now, in this particular water rights decree, the claims that were brought in 1924 were only one claim to allow the reservation to use sufficient water to be a homeland for the tribe and to enjoin upstream uses that would interfere with that. Mr. DiPaoli mentioned that the claims that have been brought in include sources that may or may not even affect the flow of the Walker River, but all that says is that even if those rights were incorporated into the decree, there would be no impact on existing uses. So that really isn't a good reason not to incorporate them. And under this court's clear invocation in the North Fork case of the doctrine of prior exclusive jurisdiction, only the district court could consider or administer those rights. So by suggesting that there are other appropriate forums or that it was appropriate to exclude certain ones of these rights without looking at them, without considering their circumstances as to whether or not they would be appropriate modifications of the decree, the court here simply shirked its entire duty as the decree court, which is supposed to be to administer all of the rights that are raised by virtue of the existing decree after the decree is entered. As to whether certain rights should have been brought in the 1924 complaint in this case, that's exactly the error we're talking about. The district court should have considered on a case-by-case basis the individual claims that were raised here. Many of them, as I mentioned, may not have had impacts on any other users. Many of them may not have existed at the time that the complaint was filed. If those circumstances, if the circumstances of those claims were such that they did not constitute appropriate subjects for modification, the court was free to exclude them on an individual basis, but the wholesale rejection of all of them was clearly erroneous and should be reversed. And this court, as we emphasized earlier, does not appear to believe that its duties go to that kind of level of detail. It seems to want to move things along, get things accomplished, and I believe one of the statements that was just made was that the difference between the claims here that were raised after the decree and the ones in Arizona against California that were allowed to be incorporated were that everybody knew that the claims in the Arizona v. California case were as yet undetermined. Well, nobody knew that with respect to things that hadn't even happened yet in this case, like the expansion of the reservation. And I don't think that that distinction appropriately excludes the Federal Reserve water right for those later reserved lands from the category of appropriate subjects for modification of this decree, which should be incorporating all Federal uses of the Walker River along its course. And if there are no further questions, thank you very much. Okay, thank you. We thank all counsel for the argument, again, in these very challenging cases. It's been a long morning. And with that, the court is adjourned. All rise.
judges: Tashima, Fisher, Bybee